UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------X

PHARRELL WILLIAMS, an individual;
ROBIN THICKE, an individual; and
CLIFFORD HARRIS, JR., an individual,

               Plaintiffs,

   - against -

BRIDGEPORT MUSIC, INC., a Michigan
corporation; FRANKIE CHRISTIAN GAYE,
an individual; MARVIN GAYE III, an
individual; NONA MARVISA GAYE, an
individual; and DOES 1 Through 10,
inclusive,

               Defendants.

------------------------------------X

14 Misc. 73-P1

OPINION

A P P E A R A N C E S:

   Attorneys for the Plaintiffs

   KING, KOLMES, PATERNO & BERLINER, LLP
   1900 Avenue of the Stars
   Los Angeles, CA 90067
   By:  Howard E. King, Esq.
       Lisa J. Borodkin, Esq.

   Attorneys for Defendants Nona and Frankie Gaye

   GORDON, GORDON & SCHNAPP, P.C.
   437 Madison Avenue
   New York, NY 10023
   By:  James M. Thayer, Esq.

   KING & BALLOW
   315 Union Street
   Nashville, TN 37201
   By:  Richard S. Busch, Esq.
       Paul H. Duvall, Esq.

WARGO & FRENCH LLP
1888 Century Park East
Los Angeles, CA 90067
By:  Mark L. Block, Esq.

**Sweet, D.J.**

Defendants and Counter-claimants Nona and Frankie Gaye (the "Gayes" or the "Counter-Claimants") have moved this Court, sitting in Part One, to quash the subpoena served by Plaintiffs and Counter-Defendants Pharrell Williams ("Williams"), Robin Thicke ("Thicke") and Clifford Harris, Jr. ("Harris") (collectively, the "Plaintiffs") on March 3, 2014 (the "Subpoena"), on Lawrence Ferrara, Ph.D. ("Ferrara") for the matter of *Williams v. Bridgeport Music, Inc.*, Civil Action No. CV13-6004-JAK, proceeding in the Central District of California (the "California Action").  Based on the conclusions set forth below, Counter-Claimants' motion is granted.

**Prior Proceedings**

The California Action is an action for declaratory relief, with a related counterclaim for copyright infringement (the "Counterclaim"), concerning two songs performed by Thicke, including the 2013 pop phenomenon "Blurred Lines."  The Gayes contend that the two songs by Plaintiffs infringe two compositions written by Marvin Gaye in which the Gayes claim an ownership interest, and that "Blurred Lines" "copies" the Marvin Gaye 1977 chart-topping song "Got to Give It Up."

2

In the summer of 2013, the Gayes heard "Blurred Lines" and believed the song was a copy of "Got to Give It Up."  To analyze the songs, they turned to an expert, Ferrara, who is a musicologists that resides in New York.  On or about July 18, 2013, Anthony Kyser ("Kyser"), the Director and CEO of All Things Marvin Gaye Limited ("ATMG Ltd."), a company owned by the Gayes and Marvin Gaye III, (Kyser Decl. ¶ 2), and Jan Gaye ("Jan Gaye"), the Gayes' mother, contacted Ferrara to analyze the similarities between the two musical hits from different eras. (Ferrara Decl. ¶¶ 2-3).   On or about July 19, 2013, Ferrara provided a preliminary consulting expert report (the "Ferrara Report").  (*Id.* ¶ 4).

The population of the musicology industry is small, and within a week of Ferrara providing the Ferrara Report, Plaintiffs contacted him to obtain his services as their own expert in the California Action.  (*Id.* ¶¶ 6-7).  Because he had already been retained as an expert for the Gayes, Ferrara informed Plaintiffs that he had a conflict.  (*Id.*).

On March 3, 2014, Ferrara was served with the Subpoena.  The Subpoena seeks Ferrara's files on his analysis performed "on behalf or at the request of Frankie Christian

3

Gaye, Nona Marvisa Gaye, and/or Marvin Gaye III, or anyone
acting on their behalf" regarding "Got to Give It Up" and
"Blurred Lines."   (Miller Decl. Ex. A).   Subsequent to the
service of the Subpoena, the parties met in a couple of meet and
confer sessions to discuss various matters related to the
Subpoena.   On April 4, 2014, the Gayes sent a letter to
Plaintiff identifying Ferrara as a consulting expert and
provided a privilege log; various emails from the Gayes also
explained that the Ferrara Report was ordered on behalf of the
Counter-Claimants by those aligned with them and not shared with
any unrelated third parties.   (Busch Decl. ¶ 6; Duvall Decl.
¶ 6).

        The Gayes filed the instant motion to quash in Part 1
on March 18, 2014.   Oral arguments were held and the matter was
marked fully submitted on April 16, 2014.


**The Motion To Quash Is Granted**

        Federal Rules of Civil Procedure 26(b)(4)(D) provides
that "a party may not, by interrogatories or deposition,
discover facts known or opinions held by an expert who has been
retained or specially employed by another party in anticipation
of litigation or to prepare for trial and who is not expected to

4

be called as a witness at trial" unless as provided under Rule
35(b) or the party shows "exceptional circumstances." Fed. R.
Civ. P. 26(b)(4)(D) (2010). Rule 26(b)(4)(B), recently amended
in 2010 (the "2010 Amendments"), designates drafts or other
disclosures that may otherwise be required under Rule 26(a)(2)
as work product.[1]

Counter-Claimants contend that Rule 26 protects the
identities of retained consulting experts as privileged unless
they are designated to testify and, thus, the Subpoena must be
quashed. The 1970 Advisory Committee's Notes appeared to have
adopted this view in what was then Rule 26(b)(4)(B) (and now
Rule 26(b)(4)(D)), when it noted that "a party may on a proper
showing require the other party to name experts retained or
specially employed, but not those informally consulted." *See*
1970 Advisory Committee's Notes on Fed. R. Civ. P. 26. Prior to
the 2010 Amendments, other courts outside of this Circuit have
held to this reading of Rule 26(b)(4), *see, e.g.*, *Ager v. Jane
C. Stormont Hospital and Training School for Nurses*, 622 F.2d
496, 500-01 (10th Cir. 1980) (Rule 26 precludes "discovery of
the identity and other collateral information concerning experts

---

[1] New Rule 26(b)(4)(B) provides: "Trial-Preparation Protection for Draft
Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any
report or disclosure required under Rule 26(a)(2), regardless of the form in
which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B) (2010).

consulted informally"); *MacGillivray v. Consolidated Rail Corp.*,
Civ. A. No. 91-0774, 1992 WL 57915, at *3 (E.D. Pa. March 17,
1992) ("[I]dentifying information concerning experts informally
consulted, but not retained or specially employed, is not
discoverable.") (quoting *ARCO Pipeline Co. v. S/S Trade Star,* 81
F.R.D. 416, 417 (E.D. Pa. 1978)), but one case in this District
has held that "the identity of nontestifying experts is not
exempt from disclosure," *Convolve, Inc. v. Compaq Computer
Corp.*, No. 00 Civ.5141 (GBD)(JCF), 2004 WL 1944834, at *1
(S.D.N.Y. Sept. 1, 2004).

        The 2010 Amendments is silent as to whether the
identity of a non-testifying expert is protected from disclosure
under Rule 26(b)(4) or whether the 2010 Amendments changed Rule
26(b)(4) in way that would now preclude the protection of such
information.  Indeed, the 2010 Advisory Committee's Notes do not
explicitly depart from the 1970 Committee's Notes, it only
adopts work-product privilege to experts.  The 2010 Amendments
retained prior Rule 26(b)(4)(B) as Rule 26(b)(4)(D).  *See* 2010
Advisory Committee's Notes on Fed. R. Civ. P. 26 ("Former Rules
26(b)(4)(B) and (C) have been renumbered (D) and (E)."); *Higher
One, Inc. v. TouchNet Information Systems, Inc.*, No. 13-mc-6020
CJS, 2014 WL 702118, at *6 n.17 (W.D.N.Y. Feb. 24, 2014).
Accordingly, the 1970 Committee's Notes' preclusion from

                              6

discovery of the identity of an informal consulting expert
remains after the 2010 Amendments.

Turning to the expert before the Court, Ferrara was
initially retained by Kyser and Jan Gaye to consult on a
litigation that Counter-Claimants anticipated they would file.
This anticipated suit ultimately culminated in the Counter-
Claimants' Counterclaim in the California Action.  Jan Gaye is
the Gayes' mother and was designated by the Gayes to work with
Kyser to procure the Ferrara Report.  (Janis Gaye Decl. ¶¶ 9-
12).  Kyser, as previously noted, is the Director and CEO of
ATMG Ltd., a company concerned with Martin Gaye's legacy.
(Kyser Decl. ¶ 2).  Plaintiffs contend Counter-Claimants waived
any work-product privilege afforded to the Ferrara Report by
having Jan Gaye obtain the report.  Notwithstanding the question
of whether Jan Gaye is a third party, in attorney work-product
analysis of disclosures to third parties, an appropriate analogy
given the adoption of attorney work-product protection from
Rules 26(b)(3)(A) and (B) in Rule 26(b)(4)(B), work-product
protection is not necessarily waived by disclosure to third
parties.  *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260(SS),
1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993).  "Rather, the
courts generally find a waiver of the work product privilege
only if the disclosure substantially increases the opportunity

for potential adversaries to obtain the information." *Id.*
(internal quotation marks omitted).  The work product doctrine
policy goals of encouraging zealous advocacy, protecting privacy
and preventing fishing expeditions is consistent with extending
the protection to prevent compelled disclosures from a party
sharing common litigation interests.  *See Hickman v. Taylor*, 329
U.S. 495, 511, 67 S. Ct. 385, 393-94 (U.S. 1947); *Medinol, Ltd.
V. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002)
("[I]t is clear that disclosure of work product to a party
sharing common litigation interests is not inconsistent with the
policies of encouraging zealous advocacy and protecting privacy
that underlie the work product doctrine.").  In any case, the
work-product doctrine applies to work product by a party or its
representatives, including the "party's attorney, consultants,
surety, indemnitor, insurer, or agent."  Fed. R. Civ. P.
26(b)(3)(A); *Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D.
401, 406 (W.D.N.Y. 2013).

Kyser and Jan Gaye were clearly acting for the
interest of the Gayes, as they were retained as representatives
of the Counter-Claimants.  They fall within the classification
of a "party" under Rule 26(b)(4).[2]  Moreover, even if Jan Gaye

---

[2] The Subpoena's own language supports this conclusion, as it requests for
Ferrara's documents made "on behalf or at the request of Frankie Christian
Gaye, Nona Marvisa Gaye, and/or Marvin Gaye III, or anyone acting on their

were to be classified as a third party, her interests were clearly aligned with the Gayes. Consequently, work-product protection does cover Jan Gaye's and Kyser's retention of and subsequent communication with Ferrara as well as facts known or opinions of Ferrara. Waiver of the work-product privilege afforded under Rule 26(b)(4) did not occur. Plaintiffs are not entitled to discover the identity of Ferrara as a consulting expert.

While the Gayes may not be compelled to disclose its consulting experts' identities to Plaintiffs, Plaintiffs knew of Ferrara's identity and alignment with the Gayes when it served the Subpoena. Rule 26(b)(4)(D) protects disclosure of "facts known or opinions held" by consulting experts. Fed. R. Civ. P. 26(b)(4)(D) (2010). Plaintiffs have not made any claims of "exceptional circumstances" that would allow discovery pursuant to the subsection. Thus, if privilege was properly asserted by the Gayes in this instance, and the burden is on the party asserting the privilege, *see von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1897), the Subpoena must be quashed.

Plaintiffs contend that the Gayes did not properly

---

behalf."

9

assert or waived privilege when they failed to provide an
adequate privilege log, that the log is temporally and
substantively deficient.  This is unpersuasive.  Under Federal
Rules of Civil Procedure 45(d)(2)(B), objection to a subpoena
must be served within 14 days after the subpoena was served, but
according to the Second Circuit, "[a] full privilege log may
follow 'within a reasonable time' to the assertion of privilege.
*In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)
(quoting *Tuite v. Henry,* 98 F.3d 1411, 1416 (D.C. Cir. 1996)).
However, this District's Local Rule 26.2(c) provides that:

> Where a claim of privilege is asserted in response to
> discovery or disclosure other than a deposition, and
> information is not provided on the basis of such
> assertion, the information set forth in paragraph (a)
> above shall be furnished in writing *at the time of the
> response to such discovery or disclosure, unless
> otherwise ordered by the court*.

S.D.N.Y. Civ. R. 26.2(c) (emphasis added).  Courts have not
always enforced Rule 26.2(c) stringently, and "some have limited
enforcement to situations in which there was no sufficient
justification for the failure to produce a log on time or to
seek leave to delay."  *In re Chevron Corp.*, 749 F. Supp. 2d 170,
181 (S.D.N.Y. 2010) (citing cases).  In light of this conflict,
the Court "considers itself free to take into account all
relevant factors."  *Id.* At 182.

10

Plaintiffs served the Subpoena on March 3, 2014. Counter-Claimants served Plaintiffs with objections to the Subpoena on March 14, 2014, including objections asserting privilege, 11 days after service of the Subpoena and within the time allotted for objections under Rule 45(d)(2)(B).  The Counter-Claimants provided the privilege log on April 4, 2014. While waiting months to file a motion to quash without submitting a privilege log does not constitute reasonable time and can be waiver of privilege, *see, e.g.*, *In re Chevron Corp.*, 749 F. Supp. 2d at 182, the Gayes waited only 19 days after the filing of their objections to the Subpoena before submitting a privilege log.  Moreover, the Gayes were concerned as to the disclosure of their retention of Ferrara as a consulting expert, a point of law that Counter-Claimants believed insulated them from having to provide a privilege log.  *See, e.g.*, *Genesco, Inc. v. Visa U.S.A., Inc.*, NO. 3:13-0202, 2014 WL 935329, at *26 (M.D. Tenn. Mar. 10, 2014) ("Rule 26(b)(4)(D) does not require a privilege log.").  Both of these factors cut against waiver. In view of these considerations, and that the delay in providing the log was not egregious, privilege was not waived by the Gayes when it provided the privilege log on April 4, 2014.  *See Netjumper Software, L.L.C. v. Google, Inc.*, No. M19-138, 04-70366CV, 2005 WL 3046271, at *3 (S.D.N.Y. 2005) ("[O]nly

11

'flagrant' violations of these rules should result in a waiver
of privilege.").

Plaintiffs' objection over the substance of the
privilege log also does not compel a finding of waiver.
Discovery from Ferrara is not permitted under Rule 26(b)(4)(D).
This has been sufficient in the past to deny a finding of waiver
even when a privilege log was not produced. *See id.* (refusing
to find waiver of expert privilege where privilege log was not
produced because Rule 26(b)(4) precluded discovery). The
privilege log provided by the Gayes provides four entries and
contains information on the document, the date the document was
created, a short description and the type of privilege asserted.
Plaintiffs contend that the privilege log is incomplete as it
does not list emails received by Ferrara. (*See, e.g.*, Kyser
Decl. ¶ 5 (noting an email from Kyser to Ferrara on July 18,
2013 that is not listed in the privilege log)). Yet the
relevant factors cuts against a finding of waiver, as a
privilege log was produced and Rule 26(b)(4)(D) protects all
facts known or opinions by a non-testifying consulting expert.
*See* Fed. R. Civ. P. 26(b)(4)(D) (2010). Not requiring a party
to prepare an extensive privilege log for such experts would
promote efficient litigation and expeditious discovery, while a
contrary holding would allow parties to play games during

12

discovery with consulting experts.  Given such considerations, the substance of the privilege log was not sufficiently inadequate for a finding of waiver.  Accordingly, the Gayes have timely asserted Rule 26(b)(4) protection from the Subpoena and the protection afforded by Rule 26 applies here.

**Conclusion**

Based on the conclusions set forth above, Counter-Claimants' motion to quash is granted.

It is so ordered.

New York, NY
May  $\mathcal{V}$ , 2014

ROBERT W. SWEET
U.S.D.J.